IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

DAVID STAATS,                               )
                                            )
            Plaintiff,                      )
vs.                                         )          NO.  CIV-05-1386-HE
                                            )
THE GOODYEAR TIRE & RUBBER                  )
COMPANY, and LAWTON                         )
COMMUNITY HEALTH PLAN,                      )
                                            )
            Defendants.                     )

## ORDER

Plaintiff David Staats filed this action in state court seeking medical coverage for his daughter under an employee welfare benefit plan ("the Plan") governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461, and sponsored and administered by his former employer, The Goodyear Tire and Rubber Company ("Goodyear").[1]  The plaintiff contends Goodyear arbitrarily and capriciously denied his claims for medical benefits[2] for his daughter who, he asserts, was an eligible dependent under the Plan.[3]  Goodyear and the Lawton Community Health Plan removed the case to federal

---

[1]*Although both Goodyear and the Lawton Community Health Plan are sued, the court will refer to them collectively as "Goodyear" or "the defendant."*

[2]*While the plaintiff refers to the denial of benefits in his petition and brief, the defendant actually denied the plaintiff's claim for his daughter's medical eligibility or coverage under the Plan.  The distinction is immaterial for purposes of the litigation.*

[3]*Goodyear had a master medical benefits plan, the FlexChoice Benefit Plan, and specific plans that applied at certain geographic locations, such as the Lawton Community Health Plan, which applied only to employees at the Lawton plant, where the plaintiff worked.  The defendant states that the plans are indistinguishable for purposes of this litigation and, because the pertinent provisions are parallel, the court will refer to "the Plan" and cite to the Lawton Community Health Plan, defendant's Exhibit 1.*

court and the parties have filed cross motions for summary judgment.[4]

Background

In November, 2003, the plaintiff, while employed by Goodyear and enrolled in the Plan, sought continued medical benefit coverage for his daughter.   Goodyear denied his claim by letter dated February 17, 2004, on the ground the plaintiff's daughter was not an eligible dependent because, having graduated from college in May, 2002, she was no longer a full-time student.[5]   The letter stated that "[i]n order for the Plan to provide continuing medical coverage facts must be provided proving [the daughter] became disabled and mentally or physically incapable of self support while a full-time student."   Defendant's Exhibit 8.   The plaintiff requested review of that decision and provided medical records which, he asserts, showed his daughter was incapable of self-support, both while a full-time student and subsequently.

The decision denying the plaintiff's request for continuing medical coverage was affirmed by letter dated June 8, 2004.[6]   In addition to determining that the submitted facts did

---

[4]*The stipulated administrative record filed by the parties did not separately identify the various entries or, according to the defendant, include the entire record.  Defendant's brief, p. 3 n.1.  The court will refer, therefore, to the parties' exhibits.*

[5]*The letter erroneously stated 2003 as the year of graduation rather than 2002.*

[6]*The plaintiff notes in his brief that the same employee who initially denied his claim for benefits, G.A. Dannemiller,  affirmed the benefit denial on June 8, 2004, intimating that he did not receive the "full and fair" administrative review of denied claims mandated by ERISA. 29 U.S.C. §§ 1022, 1133.  The plaintiff offers nothing more to show that his claim was improperly reviewed or to establish that Mr. Dannemiller either comprised or was even on Goodyear's Claim Review Committee.  As the manager of benefit operations he simply may have had the responsibility of notifying Plan participants of decisions pertaining to coverage and benefits.*

not prove that the daughter was disabled and mentally or physically incapable of supporting herself while a full-time student, Goodyear's Claim Review Committee found that, following her graduation from college in 2002, the daughter's medical coverage was discontinued as of August 31, 2002, and there was no record that the plaintiff had elected continuing coverage under COBRA.[7]

The plaintiff appealed the denial to Goodyear's ERISA Appeals Committee and was advised on June 9, 2005, that the Committee had determined his daughter was not entitled to dependent medical coverage after August 31, 2002. The Committee found that the record did not support a finding that the daughter was incapable of self-support while a full-time student, a Plan requirement for her continued eligibility, or was "incapacitated under the Plan's criteria for extending coverage to a full-time student who becomes disabled after age 19." Defendant's Exhibit 7. It also concluded that the plaintiff's notification in November, 2003, that he wished to add his daughter as a dependent because of incapacity was untimely, as the Plan required notification within 31 days if a participant's family status changed and he wanted to obtain coverage for an eligible dependent. The plaintiff then filed this lawsuit.

Standard of Review

Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989), sets forth the appropriate standard of review in cases contesting a benefit determination under an ERISA plan. "[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo*

---

[7]*Although the plaintiff notes that, as his claim worked its way through the Plan's appeal process, additional reasons for its denial were given by Goodyear's Claim Review and ERISA Appeals Committees, he cites no authority for the proposition that this was improper.*

standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."[8]  *Id.* at 115  If the ERISA plan gives the administrator discretionary powers, the district court reviews the administrator's decisions under an arbitrary and capricious standard.  Sandoval v. Aetna Life & Cas. Ins. Co., 967 F.2d 377, 379-80 (10th Cir.1992).

The parties have agreed that the arbitrary and capricious standard of review applies.[9] The plaintiff contends, however, that because the plan administrator in this case operated under a conflict of interest due to Goodyear's status as both plan sponsor and claim administrator, the deference accorded Goodyear's decision should be decreased.[10]  The conflict arises, the plaintiff asserts, because of the financial impact a decision in his favor would have on Goodyear.

The Plan here is self-funded.  Defendant's brief, p. 8 ("Here, Goodyear funds the Plan ....").  The Tenth Circuit has held that an entity which is both the plan insurer and the plan administrator operates under an inherent conflict of interest.  DeGrado v. Jefferson Pilot Financial Ins. Co., 451 F.3d 1161, 1167 (10th Cir. 2006) ("[B]ecause it is both the insurer and

---

[8]*ERISA does not establish the standard of review.  Firestone, 489 U.S. at 109.*

[9]*The Lawton Plan gave the  plan administrator "the sole and absolute discretionary authority and power to interpret plan provisions and make factual determinations in administering and carrying out the provisions of the Plan, including, but not limited to, the authority and power (a) to determine all questions relating to eligibility for the amount of any benefit to be paid under the Plan, (b) to determine all questions pertaining to claims for benefits and procedures for claim review, (c) to resolve all other questions arising under the Plan, including any questions of construction ...."  Plan, p. 34*

[10]*Goodyear admits it sponsored, funded, and administered the plan.  Goodyear's brief, p. 8.*

plan administrator, Jefferson 'may favor, consciously or unconsciously, its interests over the interests of the plan beneficiaries.'" ) (quoting <u>Fought</u>, 379 F.3d at 1003).  When such a conflict exists, a sliding scale of deference is applied; the level of deference decreases in proportion to the seriousness of the conflict.  <u>Allison v. Unum Life Ins. Co. of America</u>, 381 F.3d 1015, 1021 (10th Cir. 2004).  Where an inherent conflict of interest exists, "the plan administrator must demonstrate that its interpretation of the terms of the plan is reasonable and that its application of those terms to the claimant is supported by substantial evidence." <u>DeGrado</u>, 451 F.3d at 1168 (internal quotation omitted).  *Accord* <u>Fought</u>, 379 F.3d at 1006 (When an inherent conflict of interest, a proven conflict of interest or a serious procedural irregularity exists and coverage was denied, "the plan administrator bears the burden of proving the reasonableness of its decision pursuant to [the Tenth Circuit's] traditional arbitrary and capricious standard.").[11]

---

[11]*The recent decisions of the Tenth Circuit Court of Appeals do not appear to be entirely consistent as to the application of the "sliding scale" standard of deference.* <u>DeGrado</u> *suggests an inherent conflict, warranting the less deferential standard, exists if an entity is both the insurer and the plan administrator.* <u>Adamson v. UNUM Life Ins. Co. of America</u>, *455 F.3d 1209 (10th Cir. 2006) suggests that even such an inherent conflict need not necessarily shift the burden to the administrator.* Id. *at 1213 ("The fact that UNUM administered and insured the group term life insurance portion of this plan does not on its own warrant a further reduction in deference.").  Here, given that Goodyear is itself the plan administrator and the entity upon which the cost of benefits directly falls, the court concludes the inherent conflict warrants the indicated burden shift and less deferential standard of review.*

In light of the inherent conflict, the court will make an appropriate reduction in deference accorded Goodyear's decision. The defendant will be required to demonstrate that its "interpretation of the terms of the plan is reasonable and that its application of those terms to the claimant is supported by substantial evidence." Fought, 379 F.3d at 1006. The court will "take a hard look at the evidence and arguments presented to the plan administrator to ensure that the decision was a reasoned application of the terms of the plan to the particular case, untainted by the conflict of interest." *Id.* The defendant will bear the burden of justifying the reasonableness of the decision. *Id.*

The court has confined its review to the administrative record, Adamson v. UNUM Life Ins. Co. of America, 455 F.3d 1209, 1212 (10th Cir. 2006); Sandoval, 967 F.2d at 380, and begins its analysis by examining the language of the Plan.

The Plan

The pertinent policy provisions define an "eligible dependent" as:

- Your unmarried children 19 years or older provided they are dependent on you and, upon attainment of age 19, are full-time students. Eligibility as a full-time student terminates upon ceasing to be a full-time student or attaining age 27, if earlier. Coverage for an unmarried full-time student will be extended for 90 days following termination of status as a full-time student provided no other group medical coverage of any kind is in effect on such student.
    ...
- Your unmarried children 19 years or older provided they are dependent on you and, upon attainment of age 19, are mentally or physically incapable of self-support as determined by the Company....

- Eligibility is also extended for a full-time student who becomes disabled after age 19, up to age 27.

Plan, pp. 5,6.  The Plan imposes on participants the duty to inform the Goodyear Medical

Benefits Department and the Plan of any changes in their personal situations that might affect

their Plan coverage, including the eligibility status of dependents, within thirty-one (31) days

after the change.  *Id.* at p.13.  It also provides for continuation coverage as required by the

Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA).[12]  *Id.* at pp.28-31.

The plaintiff does not address Goodyear's assertion that he failed to obtain continuing

coverage for his daughter either by giving notification of a change in her status or electing

COBRA coverage.[13]  Instead, he relies solely on his contention that the record establishes

his daughter was diagnosed as being mentally and physically incapable of support before she

lost her full- time student status and, thus, remained eligible for coverage under the Plan.[14]

 He refers the court "generally to the Administrative Record," plaintiff's brief, p. 7, and

specifically to the medical notes of  M.Sabedra, MD, dated July 25, 2002 and August 8,

2002, a discharge summary from the Christian Family Counseling Center dated July 19,

2002, and medical records pertaining to the daughter's two stays at the Jim Taliaferro

Community Mental Health Center between 6-4-03 and 7-17-03, and 7-22-03 and 7-24-03,

---

[12]*Other provisions of the Plan that essentially repeat these terms can be found on pp. 12,  14, and 34.  Defendant's Exhibit 1.*

[13]*The record reflects that the plaintiff was sent a letter on September 8, 2002, advising him of his right to elect COBRA continuation coverage for his daughter, defendant's Exhibit 6, and  there also is a reference to the plaintiff's being sent a "notice of expiration of eligibility and form they needed to submit to show eligibility to continue medical coverage" in July, 2002.  Defendant's Exhibit 1, p.2.*

[14]*Because she graduated from college in May, 2002, the daughter's status as a full-time student ceased in May, 2002.  Her coverage then ended, unless extended, on August 31, 2002.   Defendant's Exhibit 1, Plan, pp. 5-6; defendant's Exhibit 5.*

her stay at the Red River Hospital between 7-24-03 and 8-08-03, and her stay at Brookhaven Hospital between 8-28-03 and 9-05-03.[15]

While the court agrees that the plaintiff's daughter has been treated "for very serious and debilitating emotional and psychological issues," plaintiff's brief, p. 8, that treatment principally occurred after her coverage had terminated.  A counselor at a Christian Family Counseling Center saw the plaintiff's daughter three times in July, 2002 and diagnosed her as having a major depressive disorder.  She was subsequently seen twice, on July 25, 2002 and August 8, 2002, by a Dr. Sabedra, who assessed her as having an "adjustment disorder with mixed emotional features," and recommended a psychological consultation because the daughter had not improved in the two weeks since he had last seen her.  Although these records and the other pertinent medical documents in the Administrative Record[16] evidence a potentially serious problem, they do not establish that the plaintiff's daughter was mentally or physically incapable of self-support or disabled either before or within 90 days of her college graduation.[17]

---

[15]*There are additional medical records in the Administrative Record.  The only records predating Aug. 31, 2002, include what appears to be a note pertaining to an appointment the plaintiff's daughter had with an unidentified physician on July 3, 2002, which states that she "needs a referral to CFCC.  She has had some problems with depression ...."  Administrative Record, and a letter from Julie D. Williams, M.D.  Dr. Williams writes that the plaintiff's daughter was seen in her office on August 13, 2002, "for an evaluation of symptoms of generalized anxiety.  This was the only appointment [the plaintiff's daughter] completed.  She was scheduled to return to the office for a follow-up appointment, but did not keep the appointment."  Id.*

[16]*See supra note 15.*

[17]*The Plan provides coverage for an unmarried child 19 years or older "provided they are dependent on you and, upon attainment of age 19, are mentally or physically incapable of self-support* <u>*as determined by the Company.*</u>*"  Defendant's Exhibit 2, p. 6 (emphasis*

A significant gap then occurs in the daughter's medical records.  They reflect she did not receive further treatment until almost a year later when, in June, 2003, she was admitted to the Jim Taliaferro Community Mental Health Center.  By that time, the daughter's coverage under the Plan had lapsed.

However, even if the plaintiff's daughter's condition had sufficiently changed by the summer of 2002, and the change was properly documented,[18] so that she was eligible based on the disabling condition for continued medical coverage, the plaintiff failed to provide the defendant with the required notice of her changed status within 31 days of its occurrence. Despite being informed that his daughter's coverage under the Plan was ending, the plaintiff did not take the steps required for her to be entitled to continued medical benefits.  Instead, he waited until November, 2003, to request continued medical coverage for his daughter, almost 14 months after he had allowed her coverage to terminate.  Defendant's Exhibit 1, p. 2.

The circumstances with respect to the plaintiff's daughter are truly unfortunate. However, the record does not provide a basis for concluding that the ERISA Appeal's Committee's denial of dependent coverage was arbitrary and capricious. The Committee's

---

*added).  The Plan also provided that "[p]roof of full-time student status or mental or physical handicap is required."  Id. at p. 34.  Although neither party addresses what is needed to establish eligibility under this provision, the record reflects that the Plan required "a letter from a physician stating the diagnosis, prognosis, treatment plan and that the participant is incapacitated and incapable of self-support while still eligible under the Plan, or as soon as they are notified that coverage is terminating."  Defendant's Exhibit 1, p.2; see defendant's Exhibit 10.*

[18]*See supra note 17.*

determination that the plaintiff failed to comply with the notice requirement regarding a change in his daughter's status, and that the record did not establish that the plaintiff's daughter was disabled or incapable of supporting herself while a full-time student, was reasonable and supported by substantial evidence.

Accordingly, the defendants' motion for summary judgment is **GRANTED** and the plaintiff's motion is **DENIED**.

**IT IS SO ORDERED**.

Dated this 19th day of September, 2006.

_____

JOE HEATON
UNITED STATES DISTRICT JUDGE